of the day, number 1730465, which I read the plaintiff's name as Dr. Griener v. United States. No, G-R-I-E-N-E-R, that's German, and not French. How do you pronounce the plaintiff's name? His name is pronounced Griener, Your Honor. Griener? Well, it's spelled I-E-N-E-R? That's correct, Your Honor. Judge Weiner would be surprised to know that. Okay. Good morning, Your Honors. M. L. Duran representing the appellant, Dr. Thayne C. Griener. Now, you are going to have to speak up or something. All right, Your Honor. Yes, sir. Thank you very much. Dr. Griener was a board-certified ENT, ear, nose, and throat doctor, an oral laryngeologist in Pascagoula, Mississippi. He had a nice practice. And he went to his 25th class reunion at LSU and met the head of surgery at the VA, who said, we don't have somebody at the VA here who does your kind of surgery. Would you all come on over to the VA? Because we're having to send these cases out. So he did. He came over part-time. That is 35 hours one week, 40 the next. And he maintained a wee bit of practice in Pascagoula. Roughly five years later, he received a notification that he was going to be terminated for conduct unbecoming of a federal employee. He went to the HR department and asked to see the evidence file that would support that. There wasn't anything in the evidence file like that. But the evidence file did say that it was because he was a part-time employee that he didn't, that he could be released if his services were no longer needed. Well, we can make a long story short here, because the Ninth Circuit, explain to me why we're not bound by the Ninth Circuit. And when I say bound, what I mean is that we do not, they said this was an exclusive remedy through this Office of Special Counsel, maybe, or whatever it is. And we do not normally create a circuit conflict. In fact, if we thought we were going to do that, we would have to recirculate our opinion to the entire court and get the entire court to sign on, and we don't do that very often. So why does Mangano not apply? Mangano does not apply, Your Honor, because Mangano is predicated on false assumptions. First of all, the Civil Service Reform Act had three components. There was the Office of OPM, Office of Personnel Management, there was the Marriage Assistance Protection Board, and there was the Office of Special Counsel. The law was passed in 1978. Subsequently, when the Whistleblower Act was passed in the late 1980s, there was a certain amount of independence to the Office of Special Counsel. It became a quasi-independent agency. In any case, if the conduct complained of by a federal employee, and Mangano is also a part-time physician, if the conduct complained of by the federal employee can be classified as one of the prohibited personnel practices, then the person is precluded from any other remedy other than going through the Civil Service Reform Act procedures, which means basically the Marriage Assistance Protection Board. Now, as it happens, as a matter of practice, the court assumed that Mangano and the trial court in this instance assumed that that was the sole remedy for an employee who was going to complain of a prohibited personnel practice. The first one of the ‑‑ Would you agree that all of the remedies that your client seeks in this case, including the one that was proposed, are based upon his having been improperly fired? In other words, all of the damages flow from that event? That is correct, Your Honor. There's not some separate independent thing that happened? That is correct, Your Honor. So then why is that not exclusively a matter of you go through the procedures as limited in beautifulness as they are of  Well, first of all, it's not true that the Civil Service Reform Act is the sole remedy available for an employee such as Dr. Greiner. Among the enumerated prohibited personnel practices are discrimination based on race under Title VII of the Civil Rights Act of 1964, discrimination under the Age Discrimination Employment Act of 1967. But he didn't bring any of those claims. He did not. He's bringing this intentional infliction of emotional distress claim that, frankly, I would question straight up whether it even exists in a circumstance like this, because it's not sufficiently outrageous. As upsetting as I'm sure it is for your client, and I don't mean to demean that, outrageousness is defined a little differently in my experience. But putting that aside, it's not a matter of pursuing some other federal statutory remedy. It's a matter of essentially a common law claim that you're trying to wedge into, I guess, a tort claim. Well, the tort claim is based on the same events as what would constitute a prohibited personnel practice or whistleblowing. But certainly the same event can give rise to different causes of action. And in this instance, initially Dr. Greiner was told, you're being fired because of conduct unbecoming of an employee. Then when he went to the evidence file, it said, no, we're letting you go because you were hired as a part-time employee, not covered by civil service. So what happens here is, A, he went to the Merit System Protection Board, and they said, no, you're not covered. You don't meet the definition of an employee. Then he filed a claim under the Federal Tort Claims Act. And that claim intends to show, A, infliction of emotional distress, B, tortuous interference with his business relationships relating to the fact that he left this practice and couldn't revive it, in effect. Respectfully, I actually think these are frivolous claims, putting aside the question of whether the statute governs it. I mean, if he could be fired, he was fired. He was upset about it. I understand that. I don't doubt that. But beyond that, I think this is tortuous interference. I mean, he was paid for the five years he worked and gave up the rest of his practice. That was his choice. He didn't have any guarantee that he would be kept, or he'd be suing on that guarantee. So respectfully, I think this is a completely frivolous case. That said, you still have the hurdle of making this square peg fit into a round hole. And I don't think your brief does that. So if you have something to add to that, that might be helpful. What I would add to that, Your Honor, is that the Civil Service Reform Act contains a provision. It's 5 U.S. Code 1221, the same chapter as the Mangano case relied on. And that provision says, nothing in this chapter or Chapter 23 shall be construed to limit any right or remedy available under a provision of a statute which is outside of both this chapter and Chapter 23. Certainly the Federal Tort Claims Act is outside of Chapter 5. And the court below in Mangano talked about the trying to remove the statute from Chapter 5. And the court reconciled the conflicting provisions of Chapter 5 and came up with it being an exception to a carve-out. So I would respectfully submit to Your Honors that what's happened here is this provision I just cited to you, 5 U.S. Code Section 1221, has been basically nullified. It's been nullified because the court looked at 5 U.S. Code 2105 and said, oh, this modifies the existing law and enables Dr. Greiner to access the Merit System Protection Board. In point of fact, he cannot access it. The Merit System Protection Board said he's not defined as an employee because he's not in the competitive service. Well, let me ask you a question here. I'm looking at the appeal decision of the MSPB. And that said, I mean, there's this, that is based on the contention that the administrative judge or somebody didn't use due process before terminating him. And the board rejects that. But it also says Greiner does not challenge the disposition of his whistleblowing claim. What did that mean at that time? What that meant at that time, Your Honor, is that the Merit System Protection Board was saying that Dr. Greiner could not file what's called an individual right of action. That if he wanted to pursue a whistleblower claim, that he would have to go to the Office of Special Counsel and the whistleblower. And the way that works is if the Office of Special Counsel decides to prosecute it, well and good. If he does not. So you were well aware of that at the time that you were going before the MSPB. You were well aware of this alternative of the OSC. Is that still available? It is, Your Honor. Why haven't you pursued that? I expect that it will be pursued, Your Honor. But the point here is we're talking about two different causes of action. One, a whistleblower claim, which is, and the second claim, a tort claim. And they arise out of the same events. If he was correctly fired, if he wasn't fired, let's put it this way, if he wasn't fired for being a whistleblower, if he was just fired because they don't need his services anymore or they didn't like his tie, he doesn't have any of these other claims. You can't just go around suing employers for intentional infliction of emotional stress because they fire you within their rights. Or put another way, do you have a case that says you can? Well, I think the point is this, Your Honor, if the employer is firing you with the intent and motivation solely to cause you emotional distress, to interfere with your business relationship, that being the practice that he had left and had difficulty in reviving as a result of the situation, then we're talking about a separate claim. Let me ask you about the fact that apparently your client and Dr. Bustani, who is a congressman, and your client's boss all went to medical school together? That is correct, Your Honor. Is there some personal thing going on here among these people? Well, I don't think that Congressman Bustani had anything to do with the situation at the VA. But unfortunately, Dr. Fazekas May did, and she was the person who terminated him. With the collaboration of the acting head of HR at the time, a gentleman named Gary Player. But, I mean, the only theory of this intent of harming him is because he's a whistleblower. Otherwise, it's no different than, you know, I've got to let you go. I'm sorry, I don't like your tie. I'm going to just let you go. And the only way you can show this intent to harm you that you're claiming is because of the whistleblower argument. I just don't see how you can divorce your claims from the whistleblower argument. I would agree that's one argument that would be made. But there's a second one, which is this. He was ultimately told, we're letting you go because your services are no longer needed. In point of fact, they were sorely needed. And the minute he left, they had no way to treat those patients he'd been treating. So it boils down to what you're saying. How is that an intent to harm him? Why would they have that intent to harm him but for the whistleblowing? Do you like your tie? I would agree the intent to harm certainly relates to the whistleblowing as to what other motivation there was to do this as an act of spite or I cannot say at this point. I think that's the problem. But I appreciate your efforts on behalf of your client. What was desired here is that if the case proceeded to discovery and trial, we would be able to ascertain why on information belief there was an intent simply to inflict emotional distress on this doctor and interfere with his... Do you have any case where somebody has been able to bring an IIED claim based on simply being fired? Do I have any case in which a party could bring what kind of claim, Your Honor? Okay. Someone sues their employer successfully for IIED and potential infliction of emotional distress based solely on being fired. No other thing, no molestation, no, you know, abuse, nothing, just you're fired. I believe the Rubin case was the first case in the Fifth Circuit in which there was an intent to harm the patient. The Fifth Circuit recognized a cause of action for intentional infliction of emotional distress. I think this is a viable cause of action if the facts can be shown that support the claim, which is, was there an intent, was there a motivation simply to inflict this emotional distress? All right. You have time for rebuttal if you're... Yes. Thank you, Your Honor. Thank you. Ms. Gutierrez. May it please the Court. Dr. Greiner does have limited access to civil service reform remedies, and that is by taking his claims of whistleblowing or prohibited personnel practices to the Office of Special Counsel. The Office of Special Counsel, after it does its investigation, may seek corrective action on behalf of Dr. Greiner to the employer, to the VA, if the Office of Special Counsel believes that Dr. Greiner's termination was unlawful or because of whistleblowing. Even if the Office of Special Counsel does not believe in Dr. Greiner's case, Dr. Greiner still may seek an IRA, an independent right of appeal, to the VA. And that's still open to him? Yes. There are no statute of limitations on that, Your Honor. What about the straight-up argument of whether there even is an IAED claim? And just put aside the civil service, just throw that out the window. There is such a claim, separate and apart from the whistleblowing notion. I mean, I just don't even really understand why we're in such deep hay here over all of this detail when it's pretty clear to me he just doesn't have a cause of action, period, outside of the whistleblowing claim. Well, Your Honor, the government filed a motion to dismiss based on subject matter jurisdiction as opposed to 1286 failure to state a claim. Could you bring that microphone down there? We brought the, the government brought the motion to dismiss based on subject matter jurisdiction, because that's the first issue we generally look at, because, of course, of the federal court's limited jurisdiction. So we did not address whether or not, if Dr. Greiner got past the subject matter jurisdiction question, that he could in fact establish subject matter jurisdiction. He would have a viable claim. So we were focused on subject matter jurisdiction, and that emphasizing that Dr. Greiner is an employer, a federal employee, excuse me, for limited purposes of the Section 2302 prohibitive personnel actions. I mean, I personally, I understand your argument, I have your argument, I don't have questions about it, except the one I just asked which you've answered, so that's fine. So to, to move on, that. Will the VA take as long, will the office, is this Office of Special Counsel, is that related to personnel disciplines across the federal employee spectrum, or is it somebody devoted to the VA? No, it's across the spectrum, Your Honor. Well, I don't know whether that gives me pause, comfort or not, because if it went to the VA, he might die before they got it required. They gave a ruling, right? Dr. Greiner might die? Yeah. I'm speaking rhetorically based on the well-documented problems the VA has had recently. Yes, Your Honor. No, the Office of Special Counsel was originally stood up under the Civil Service Reform Act, and many years later became quasi-independent under the Executive Branch. The only problem, did the Mangano case deal with this Section 1221 or 1222? No, Your Honor. That's no exclusive, well, that's what I'm saying. Notwithstanding? Yes. No, Your Honor. But in the government's brief at page 13, we did address Dr. Greiner's argument. And the district court didn't really address it either, did he? No, Your Honor. And the district court, as you know, had an IRA appeal pending before the MSPB. So Dr. Mangano was just looking to take a direct right of appeal to the MSPB, very much like Dr. Greiner is here in this particular case. And as you know, the district court relied on Mangano, the Ninth Circuit and Mangano, by finding not only that he was an employee for purposes of whistleblowing practices, and therefore he needed to take his personnel action, which Dr. Greiner has admitted stems from his termination. So it's a personnel action that can be considered as one of the enumerated or prohibited personnel practices. Well, fine. So why doesn't he have other, I'm not saying whether there's merit or not in this Federal Tort Claims Act, but what evidence do you have that the whistleblower carve-out is itself an exception to 1222? Well, other than the case that we cited here in our brief, the Grisham case, Your Honor, that we said that the Fifth Circuit held that the whistleblower carve-out did not fundamentally alter its structure. In general terms. Undoubtedly that's true in general terms, and I forgot, did Grisham or the, there's another, there are other, there are plenty of Fifth Circuit cases about exclusive remedies for Federal employees, but about, you know, this provision that it's non-exclusive. 1222 says it's non-exclusive for certain purposes, right? Yes, Your Honor. But that is what the Fifth Circuit addressed, that same argument that 122 somehow didn't make it exclusive to a Federal employee. And the Fifth Circuit in Grisham cited the Ninth Circuit and held that the Whistleblower Protection Act increased the protection for whistleblowers, but did so within the context of the Civil Service Reform Act. And yes, we agree that the Fifth Circuit has held the exclusivity of the Civil Service Reform Act in other contexts, but such as in 1991, the Rollins v. Marsh case, the Fifth Circuit rejected claims by the plaintiffs who were Federal employees that they attempted to file a Federal Torts Claims Act seeking damages for emotional distress because of a termination, and the wife had lost her job. She lost her security clearance, and the Fifth Circuit held that those Federal tort claims were, in fact, preempted by the Civil Service Reform Act. The difference here is that, as opposed to being hired under a statute that labels Dr. Greiner, or classifies, I should say, Dr. Greiner as a civil servant, he was hired as a part-time employee without regard to civil service. And it's because of 2105F that brings him in. Yeah, I mean, just for the sake of argument, can you cite me any cases or give me any examples of where other remedies might be available under 5 U.S.C. 1222? Other remedies outside the Civil Service Reform Act? Correct. Well, the Civil Service Reform Act expressly preserves Federal employees' rights and remedies under anti-discrimination statutes. That's why Federal employees can, in fact, sue under Title VII, the Americans with Disabilities Act, or the ADEA, the Age Discrimination and Employment Act. So if it isn't expressly preserved, it's gone? No, no, no. No, what I'm saying is that the Civil Service Reform Act, unto itself, expressly preserves... Yes, and your argument is if it's not expressly preserved in the Civil Service, then you don't have it. Yes, Your Honor, I'm sorry, I've misunderstood. Yes, I agree. So since 1222 says, except as provided in 1221I, nothing in this chapter shall be construed to limit any right or remedy available under a provision of statute outside of both this chapter and Chapter 23, then in principle, the Federal Tort Claims Act is not accepted. Correct. That's our position, Your Honor. Well, so since he's a whistleblower, why is a Federal Tort Claims Act not accepted for him? You only get there if you say that the essence of his Tort Claims Act is the same as his discharge, right? Well, I would submit that Dr. Greiner could never bring a Federal Tort Claims Act out of any personnel action arising out of his federal employment. Why? Not a Federal Tort Claims Act. Suppose he slipped and fell in the VA hospital? Then he would be relegated to the FICA, the Federal Employee Compensation Act? Well, then that's an exception under 1222, right? Yes, Your Honor. But he would have that. Why could he never bring an FTCA claim? My position is because if it derives from his employment, from a personnel action taken against him, then it's preempted by the Civil Service Reform Act. So you have to go back to the complaint and say the essence of the complaint cannot be divorced from his termination? Correct. Courts have found when a supervisor has put a loaded gun to a federal employee's head, that was not a personnel action, and therefore that employee who had the gun to his head was able to avail himself of a tort claim. Rape by a supervisor. No, Your Honor. The claim of IID is based solely on the allegation that you were mad at me because I blew the whistle, so you set out to ruin my life by firing me. Yes, Your Honor. We move that the lower court's dismissal of Dr. Greiner's case be affirmed. However, with one housekeeping note, the lower court's judgment on page 92 of the record, on appeal, states that Dr. Greiner's claims were dismissed with prejudice. As this was a subject matter jurisdictional argument, the dismissal should have been without prejudice. And in keeping with this court's recent case of Campos v. United States, 8-8-8, Fed 3rd, 7-2-4. The United States urges that the court affirm the dismissal, but remand with instructions to the district court to enter a revised final judgment dismissing Dr. Greiner's case. We can modify it without remand? According to Campos v. United States, which was decided in April, that it needs to be remanded with instructions to revise. Okay, we'll figure that out. Your Honors, cases are constantly filed, claims under the Americans with Disabilities Act at the VA. And those employees also file claims for stress related to the emotional state of their employees. But that's under the ADA. No, under the Federal Compensation Act, they file workers' compensation claims in Dallas, saying that they are, that as a result of failure to accommodate their disabilities, that they're stressed, they're anxious, and so forth. And the... Have you filed a workers' comp claim for this, for Mr. Greiner? I beg your pardon? Have you filed a workers' comp claim for Dr. Greiner? No, Your Honor. Okay, then let's not talk about that. Secondly, employees without end bring claims of race, color, national origin, discrimination, sex, and they bring them through the U.S. Equal Employment Opportunity Commission. It's a completely different process. The Civil Service Reform Act is your exclusive remedy. You've got to go through MSPB. So, in point of fact, it is not, as a matter of practice, the sole remedy available. So, what I'm asking here, and Dr. Greiner is asking, is that the Court not nullify the provisions of 1221, which says you can pursue other cause of action that aren't under this statute. And counsel is correct, this was a 12B1 decision, and it didn't reach the, it wasn't a 12B6. So, what we seek here is a remand, and a decision that, in effect, Montgomery missed the beat. And the beat they missed is that 1221 was never addressed. We're asking this Court to address 1221 and say that it's not negated, it's not nullified. In practice, there are other causes of action outside of the Civil Service Reform Act that are regularly pursued. And in this particular case, now the government is saying, nope, you can't do an FTCA. Well, then the same logic would have to apply to the other kinds of claims, the Title VII claims, the ADEA claims, that go through EOC, which is not part of the Civil Service Reform Act. Okay. Thank you, Your Honors.